## Stephenson *versus* Dickson.

1. All that is necessary to render absolute the liability of an endorser of a promissory note, is, that a demand be made upon the maker at the place fixed for payment, on the last day of grace, and that due notice of non-payment be given to the endorser. *A protest* is unnecessary; and whether it be made on the day of the demand, or on the next day, or not at all, is immaterial.

2. A demand of payment was made at the proper time and place; and the *notice* of protest and non-payment was *dated* on the 2d September, which was the next day *after* the demand. In the notice the endorser was informed that the note had been *this day* protested for non-payment, demand for payment having been first *duly made*, and payment refused. *Held* that the notice was not calculated to mislead the endorser as to the time of the demand, and was sufficient.

3. As a general rule the notice must be sent as early as the first mail succeeding the day of the demand; but if the mail closes at so early an hour that it is impracticable to forward a letter by it, a notice sent by the next mail will be in time.

4. A note dated at New Castle fell due on the 1st September, and was protested at Pittsburgh on that day, being the last day of grace. The notice of protest was deposited in the post-office at 9 A. M. of the 2d September, and went by the mail of the 3d September, enclosed to the second endorser, who had it served on the first endorser, as the witness believed on the 3d September. *Held* that if the mail for Newcastle was closed at 2 or 3 o'clock in the morning of 2d September, the notice was deposited in the post-office *in time*; but if the mail of the 2d did not close *till* 7 o'clock A. M. of that day, the depositing of the notice in the post-office at 9 o'clock of that day was too late.

5. An endorser is entitled to one day after he receives notice to transmit it to his prior endorser; and thus if the mail of the 3d September was in time, it was not material whether notice was given to the first endorser by the second endorser on the 3d or 4th September.

ERROR to the Common Pleas of *Lawrence county*.

Action of assumpsit by Dickson & McClymond *v.* Josiah Stephenson, as endorser of a note of George Lilford, as follows:—

New Castle, May 29, 1852.

Three months after date I promise to pay to the order of Josiah Stephenson, at the Bank of Pittsburgh, $500, without defalcation, value received.

$500.                                        GEORGE LILFORD.

The drawer negotiated the note to Dickson & McClymond, of New Castle, who endorsed the same to Williams & Co., of Pittsburgh; and on its maturity, viz., on the 1st September, 1852, at the request of the latter, it was presented for payment, and was protested for non-payment, by a notary, at Pittsburgh. The protest was dated 1st September. Two notices of the demand of payment and protest were sent by mail to Dickson & McClymond, who caused one of them to be served on Josiah Stephenson, on the 3d or 4th September. The person who served the notice

[Stephenson v. Dickson.]

said he thought it was served on the 3d September. The notice to Stephenson was dated September 2, 1852, and it was stated therein that the note " has been protested *this day*, at the request of W. H. Williams & Co., bankers, for non-payment; demand for payment having been first duly made, &c."

The deposition of the post-master at Pittsburgh was taken, and he stated that in September, 1852, the mail for New Castle was closed *before* seven o'clock, A. M., and left the office at about half-past seven, or between that and eight; that at that time the business hours of *wholesale merchants* were from 7 A. M. to 6 P. M; of brokers, from 8 to 4; and of *bankers*, from 9 to 3.

The deposition of the *notary* was read, and he stated that on the 1st September, 1852, about 4 o'clock, P. M., he received the note in suit for protest, if not paid. That he presented it and protested it in the course of the same evening; that the notices of protest were placed in the Pittsburgh post-office on the morning of the 2d September, at 9 o'clock. A notice to Stephenson, and one to Dickson & McClymond, were enclosed in the same envelope, and directed to Dickson & McClymond, at New Castle. He said it was usual to direct the notices of protest to the last endorser or endorsers, where they live at a distance, and where we do not know the residence of the prior endorsers.

He further stated, that upon inquiry of the post-master at Pittsburgh, about that time, he was informed that the mail for New Castle closed at 12 o'clock at night. Sometimes, however, letters were placed in the mail at 2 or 3 o'clock in the morning. He further stated, that the late hour of 4 o'clock, P. M., at which notaries receive notes for protest from brokers—the time necessarily consumed in making demands—drawers sometimes living out of the city—and the time occupied in making out certificates of protest and registering thereof, (which is a copy of certificates,) make it sometimes impossible to have all notices served and sent the same night.

Three questions were submitted: 1st. Whether the *notice* served upon the alleged endorser does not by its own terms discharge him from liability, it being alleged that it showed that no demand of payment was made on the 1st September, which was the last day of grace. 2d. Whether the notice, if good upon its face, was served in time to make the endorser liable. 3d. Whether there was sufficiently certain evidence of service of notice, to submit the case to the jury.

AGNEW, President Judge, as to the first proposition, charged, that it being stated, in the notice of protest, that payment of the note had been first duly demanded, it was meant that the demand preceded the protest.

As to the 2d proposition, the Court observed: "Notice of demand

[Stephenson *v.* Dickson.]

and non-payment must be sent by the first mail of the next day at the farthest, after payment has been demanded. But when the mail of the next day after dishonor closes at an unseasonable early hour, as at 12 o'clock, of the night before, or 2 or 3 o'clock in the morning, it is sufficient if it be put in the next mail. If the jury believe the testimony of Snowden, the notary, as to the time of the closing of the mail, and he is not positively contradicted by Anderson, the postmaster, who fixes no precise time of closing, only that it was *before* 7 o'clock, A. M., the depositing of the notice at 9 o'clock, A. M., of the 2d September, was done in time. But if the mail of the 2d did not close *till* 7 o'clock, A. M., it was too late." The case of Lawson & Covode *v.* Salem Bank, *Am. Law Reg.* of 1853, p. 617, cited.

As to the 3d proposition, the Court charged: "The defendant called Hosea Lewis, who stated that the notice of protest was handed him by Dickson, one of the plaintiffs, who said he got it out of the post office, and directed him to serve it on the defendant, which he did on the same day. As to the day this took place, he first said it was on the 3d or 4th of September, 1852; then, on being asked, he said he thought it was on the 3d; and on cross-examination, repeated his belief that it was on the 3d. The proof of notice lies on the plaintiffs.          *          *          *          *
The protest being in evidence, and the witness being called by the defendant to contradict it, the jury, not the Court, must determine what the evidence proves. If the letter containing the notice arrived in New Castle on the 2d of September, service of the notice would do on the 3d, but not on the 4th. But if it arrived on the 3d, service on the 4th would be sufficient. We consider it immaterial whether the notice comes, as in this case, from the holders or from the plaintiffs, the rule, in Pennsylvania, being ' that when it is given by the holder directly it is soon enough if it reach the particular endorser as soon as it would have reached him circuitously through the subsequent endorsers, each of whom is entitled to an entire day to hand it in :' Etting *v.* Schuylkill Bank, 2 *Barr* 357. In that case the endorsers lived in the same city. The testimony here shows that the letter deposited in the post office at 9 o'clock, A. M., of the 2d, must have left after 12 o'clock at night, of that day, and consequently could not have reached New Castle until the 3d. If this be so, the notice was sent in due time, and served by the plaintiff likewise in time."

May 24th, 1854, verdict for plaintiff.

It was assigned for error, that the Court erred in their charge as to the three propositions.

*Taylor*, for plaintiff in error.—The note should have been presented for payment on the 1st September, that being the last day

[Stephenson v. Dickson.]

·f grace.   Reference was made to the case of Etting v. Schuyl-
kill Bank : 2 *Barr* 355; 2 *Hill* 588, cited in *Brightly's N. P.
Rep.* 484

2.  Where there is a regular intercourse between the places by
post, the notice should be sent by the next post after the dis-
honor, if a reasonable time remains for writing and forwarding
the notice : 2 *Greenleaf's Ev.* 186.

3.  The notice in this case was given by the holders, Williams
& Co.   The holder, when the note has been dishonored, may
resort either to his immediate endorser, and then he must give
him notice within the proper time ; or he may resort to any or all
of the other endorsers, *in which case* he must give them notice
respectively in the same manner as if each were the *sole* endorser,
for the holder is *not* entitled to as many days as there are prior
endorsers, but each endorser has his own day : *Story on Promis-
sory Notes*, § 330, and authorities there cited.   The law-merchant
is part of the *jus gentium*, and Pennsylvania should conform : 2
*Barr* 104.   The notice then should have been served on Stephen-
son (the endorser) at latest on the 3d.   But the witness is uncer-
tain whether it was served on the 3d or 4th.   " Where a witness
testified that he gave notice in *two* or *three* days after the dis-
honor, notice in two days being in time, but notice on the third
day being too late, it was held not sufficient evidence to go to the
jury, and the plaintiff was nonsuited :" 2 *Greenleaf's Ev.*, § 186.

*McGuffin*, for defendants in error.—The testimony of the post-
master was, that but one mail for Newcastle left Pittsburgh on
each day, and that it closed *before* 7 o'clock.   The notary placed
the notice in the post-office at 9 o'clock, A. M., of the 2d September.
It could not arrive at Newcastle before the evening of the 3d,
as the mail of the 2d had been closed before it was deposited in
the post-office.   The notary (as the agent of the holders) was en-
titled to the 2d of September to prepare the notices, and would
be bound to serve notice on the endorsers within business hours of
that day, if they resided in the same town : *Story on Promissory
Notes*, § 289.   And would be bound to send it the next day after
dishonor, if residing out of town, by the next practicable mail :
*Id.* 288.   It was contended that, as business hours in Pittsburgh
(among *merchants*) began at 7 o'clock, and the mail being closed,
according to the post-master, *before* 7 o'clock, it would be unrea-
sonable to require service on endorsers before 7 o'clock, or to re-
quire notice to be put into the post-office before that time.   Rea-
sonable diligence is all the law demands.   If so, the deposit, in
time for the mail of the 3d September, was in time : 17 *Mass.*
499 ; 1 *Hill* 263 ; the case of Lawson v. Covode, cited by Judge
AGNEW : 1 *Smedes & Marshall* 261 ; 24 *Maine* 458, and authori-

[Stephenson *v.* Dickson.]

ties therein cited; *Story on Promissory Notes* 325; *Byles on Bills* 160; 23 *Pick.* 307.

Notice to an endorser is in time, if given on the day of the dishonor, or in the *course* of the next day; and it is not requisite to give such notice by the very next mail after dishonor of the note. The next day is early enough; and, if there be two mails a day, it is not material by which the notice is sent: 17 *Mass.* 453.

No particular form of notice of dishonor is requisite: *Story on Pro. Notes* 348; 4 *Barn. & Cress.* 340; 10 *Ad. & Ellis* 125; 3 *Met.* 495. It is sufficient that the notice state the fact of presentment, and that the holder looks to the endorser for indemnity. Whether the demand was duly and regularly made, is matter of evidence at the trial: 11 *Wheaton* 431; Mills *v.* United States Bank, 1 *Pick.* 406. The statement in the notice in this case, that the note had been duly protested for non-payment, was not calculated to *mislead*. The notice meant that it was presented in due time: 2 *Penna. Rep.* 63; 7 *Taunton* 167: 2 *Ser. & R.* 63; 2 *Harris* 483. The facts were in dispute, and were properly submitted to the jury; 7 *W. & Ser.* 264.

The opinion of the Court was delivered by

KNOX, J.—All that is required to make absolute the liability of an endorser upon a promissory note is, that demand should be made upon the maker at the place fixed for payment upon the last day of grace, and that due notice should be given of non-payment to the endorser. A protest is an unnecessary act, and whether made on the day of the demand, the succeeding day, or not made at all, is wholly immaterial.

It is conceded that the demand for payment was made at the proper time and place; but it is contended, upon behalf of the defendant below and plaintiff in error, that the notice was insufficient to charge him as endorser: 1st, Because it was calculated to mislead him as to the time when the demand had been made. 2d, Because it was not forwarded to him in due time.

The notice was dated on the 2d day of September, which was the day after the demand had been made. In it the endorser was informed that the note had been " this day protested for non-payment, demand for payment having been first duly made by me at the Bank of Pittsburgh, and payment refused—the holder looks to you for payment thereof."

Had the notice stated that the demand was made on the second day of September, the cases of Etting *v.* Schuylkill Bank, 2 *Barr* 355, and of Ransom *v.* Mack, 2 *Hill* 588, would have been in point; but, instead of this being so, the defendant was notified that the demand was " duly made," which was in accordance with the truth, as it had been made on the first day of September.

[Stephenson *v.* Dickson.]

What was said in the notice in respect to the protest, cannot vary the case, for it was a gratuitous act alike to make the protest and to give notice thereof to the endorser.

On the day succeeding the demand, at nine o'clock A. M., the notary deposited in the mail at Pittsburgh, a notice of non-payment, directed to Dickson & McClymond, the last endorsers, at New Castle, Pennsylvania, enclosing a copy for the first endorser, Josiah Stephenson, who resided at the same place, and who received his copy, as the witness thought, on the 3d, but, at all events, not later than the 4th of September.

It was in evidence that, at the time the notice was sent, there was but one mail a day between Pittsburgh and New Castle, which left the office between seven and eight o'clock A. M. The post-master at Pittsburgh testified that the mail was closed before seven o'clock A. M.; and the notary stated that, upon inquiring of the post-master, he was informed that the mail for New Castle closed at twelve o'clock at night. Sometimes, however, letters were placed in the mail at two or three o'clock in the morning.

The Court of Common Pleas instructed the jury that if they believed the " testimony of the notary, as to the time of the closing of the mail, the depositing of the notice at 9 o'clock A. M. of the 2d September was in time. But if the mail of the 2d did not close till 7 o'clock A. M., it was too late." And " if the letter containing the notice arrived in New Castle on the 2d of September, service of the notice would do on the 3d, but not on the 4th; but if it did not arrive until the 3d, service on the 4th would be sufficient."

Clearly the plaintiff in error has no cause to complain of this instruction. True, as a general rule, the notice must be sent as early as the first mail succeeding the day of the demand; but if the mail closes at so early an hour that it is impracticable to forward a letter by it, one sent by the next mail is in time. As the jury have found that the mail which left Pittsburgh for New Castle between 7 and 8 o'clock on the morning of the 2d September, closed as early as 2 or 3 o'clock of the same morning; it was not a practicable thing for a letter to be mailed on that morning so as to go by that mail; and hence it follows that one placed in the office in time for the next mail was sufficient. Leaving Pittsburgh at 8 o'clock on the morning of the 3d, the letter containing notice of the non-payment of the note would reach Dickson & McClymond, at New Castle, on the same day in the evening, and whether they gave notice to Stephenson that evening or the next morning was unimportant, as in either case it was in time. An endorser is entitled to one day after he receives notice to transmit the same to his prior endorser.

The authorities sustaining the rules laid down by the learned

[Stephenson *v*. Dickson.]

judge who presided in the Common Pleas are so numerous and uniform that it is unnecessary to quote them.

Judgment affirmed.